United States District Court
Southern District of Texas
**ENTERED**
March 05, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| NEMO CAY RESORT TOWNHOME ASSOCIATION, INC., | § § § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 2:19-CV-00386 |
| ROCKHILL INSURANCE COMPANY SUBSCRIBING TO CONTRACT CTW001033, *et al*, | § § § § § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Now pending is Plaintiff Nemo Cay Resort Townhome Association, Inc.'s ("Nemo Cay") "Opposed Motion to Partially Set Aside Appraisal Award" (D.E. 21) and the associated responses and replies (D.E. 22, 24, 28). Defendant Rockhill Insurance Company ("Rockhill") opposes the motion, contending that Nemo Cay merely disagrees with the conclusions in the binding appraisal award. A hearing was held on February 24, 2021 regarding the motion to set aside before the undersigned. For the reasons discussed further below, it is recommended that Nemo Cay's motion (D.E. 21) be DENIED.

### I. BACKGROUND AND ARGUMENTS

    *a.   Procedural History*

In March 2020, Nemo Cay moved to compel an appraisal of damage that Hurricane Harvey caused to its property. (D.E. 11). In April 2020, the District Court granted the

motion. (D.E. 17).[1] The Court noted that the terms of the applicable insurance policy provided that:

> If [Rockhill] and [Plaintiff] disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the less. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

(*Id.* at 3). The policy further provided that, even in the event of an appraisal, Rockhill still retained its right to deny the claim. (*Id.*). The Court ordered that Rockhill select a competent and impartial appraisal pursuant to the terms of the policy by May 12, 2020. (*Id.* at 13).

The parties informed the Court that an appraisal award was entered on October 5, 2020. (D.E. 20). The umpire and Rockhill's appraiser each signed the appraisal award, satisfying the terms of the policy requiring that any two of the appraisers and umpire agree. (*Id.* at 1). Rockhill sent payment of the appraisal award to Nemo Cay. (*Id.*). However, Nemo Cay disagreed with the award and believed it should be set aside, leading to the present motion.

    b. *Arguments*

In the motion, Nemo Cay seeks to set aside the portion of the appraisal award regarding the roof, contending that it is not an honest assessment of the covered damage

---

[1] The District Court's order includes an in-depth recounting of the underlying facts of the case, which are omitted from this memorandum.

due to a mistake or accident on the part of the umpire. (D.E. 21 at 1). Specifically, Nemo Cay argues that the appraisal calls for replacing the roofs and roof flashings on all six buildings, but the award does not provide an allowance for the removal and replacement of siding that is necessary to access the roof flashing. (*Id.* at 1-6). Nemo Cay asserts that the umpire made an accident mistake because, despite providing for the replacement of both the roofs and roof flashings, he mistakenly assumed that the roof flashings could be removed and replaced without removing the siding. (*Id.* at 7-8). Nemo Cay contends that this is not a minor discrepancy because their appraiser estimates that the siding portion of the repair could be over $400,000 itself, but the appraisal award is only $269,971.34 total. (*Id.* at 7, 9). Further, Nemo Cay contends that the appraisal award should be set aside because it does not comport with the policy's requirement to set an accurate "amount of loss" and because it is not an honest assessment of the necessary repairs. (*Id.* at 8-11).

Rockhill responds that the umpire did not make any accident or mistake, but rather rejected Nemo Cay's contention that the siding needed to be removed and replaced in order to replace the roof flashings. (D.E. 22 at 5). Rockhill argues that the umpire noted that the roof replacement on Building 5, which had already been done, did not include the replacement of siding, among other reasons for his decision. (*Id.* at 5-6). Thus, Rockhill argues that Nemo Cay merely disagrees with the umpire's decision and has not shown any infirmity requiring the award to be set aside. (*Id.* at 6). Further, Rockhill argues that the appraisal award complies with the policy's requirements and is an honest assessment of

3

the necessary repairs, Nemo Cay just disagrees with it. (*Id.* at 6-8). In a sur-reply,[2] Rockhill further argues that Nemo Cay has not established any accident or mistake, only that it disagrees with the appraisal award. (D.E. 28 at 4-5).

    c.   *Submitted Evidence*

The insurance policy provides that, if the parties disagree on the amount of loss, either party may make a written demand for an appraisal. (D.E. 11-1 at 24, 46). Each party selects an appraiser, and the two appraisers select an umpire. The appraisers then separately state the amount of loss, and if they fail to agree, they submit their differences to the umpire. A decision agreed to by any two is binding. (*Id.*).

Nemo Cay attached a copy of umpire Carl Johnson's September 30, 2020, award estimate, which indicated that he was including removal and replacement of the roof flashing on five of the six buildings on Nemo Cay's property. (D.E. 21-3 at 2, 4, 6, 8, 11-12). The award did not provide for any removal or replacement of siding. (*See generally* D.E. 21-3). Johnson sent the award estimate to the appraisers over email the same day. (D.E. 22-2 at 11-12). He noted that the roof needed to be replaced due to wind damage, but that there did not appear to be any damage to the siding. (*Id.*).

Nemo Cay's appraiser Rick Guerra-Prats subsequently emailed their roofing consultant Thomas McCoy, asking him to review the award estimate and give his thoughts on whether the siding needed to be replaced in order to replace the roof flashing. (*Id.* at 10-11). Johnson responded that he did not see the replacement of siding in the roof section

---

[2] Following Rockhill's initial response, Nemo Cay filed additional evidence. (D.E. 24). The undersigned accordingly granted Rockhill leave to file a sur-reply. (D.E. 27).

of Guerra-Prats's estimate and assumed that the included siding work was for wind damage. (*Id.* at 10). Johnson further stated that most roof assembly was able to be completed without removing siding to replace flashing, and he noted that the roof was replaced on Building 5 without removing siding to install flashing. (*Id.*). McCoy responded that replacing the siding was necessary because it had to be removed to get to the flashing. (*Id.* at 8-9). Based on McCoy's response, Guerra-Prats requested that Johnson reconsider including the replacement of siding in the appraisal, stating that it was the only way to make the repairs properly. (*Id.* at 7). He also stated that the insurance adjuster included replacement of flashing on Building 5, but that he was "real sure that the roofer did not replace the flashings because [the] estimate says nothing about the removal of siding or other associated items." (*Id.* at 5).

Rockhill's appraiser Randall Taylor signed on to the award estimate. (*Id.* at 4). Johnson made no changes to the estimate, concluding that it was a "fair award given all the evidence reviewed, inspected and discussed." (*Id.*). The award was entered on October 5, 2020. (D.E. 22-4).

In an October 15, 2020, report, Guerra-Prats stated that an additional $423,756.92 would be needed to replace the step and head flashing. (D.E. 21-5 at 1). In particular, he noted that the siding had to be removed and replaced in order to replace the flashing. (*Id.*).

In an October 23, 2020, report, McCoy stated that his inspection of the roof on Building 5 indicated that that the headwall and sidewall flashing had not been replaced when the building was re-roofed in March 2018. (D.E. 21-4 at 3). However, he also concluded that there was evidence of rust on the flashings that required removal and

5

replacement. (*Id.*). McCoy stated that, in order to replace the flashing, the siding would also have to be removed and replaced. (*Id.* at 4). He stated that the fastener intended to secure the siding had also secured the flashings, so it was impossible to replace the flashing without removing the siding. (*Id.* at 10). McCoy believed that the reason the re-roofing of Building 5 did not include replacement of the flashing was that the siding would have to be removed and the insurance company had not provided for that scope of work. (*Id.*). McCoy attached pictures indicating that the nails on the siding also went through the flashing and showing some rust on the flashing. (*Id.* at 20-23, 28-29, 31).

Johnson stated in a declaration that he reviewed the supplemental reports from Guerra-Prats and McCoy. (D.E. 22-3 at 2-3). He nonetheless believed that the appraisal was a true and honest award based on all evidence submitted by the appraisers and their respective experts. (*Id.* at 3). He believed that McCoy's supplemental report was considered and discussed thoroughly by the panel, but that the additional work McCoy called for did not meet the typical and customary building practices within the roofing industry. Johnson further stated that the roof was replaced on Building 5 without removing the siding and that there was no mandate or code requiring siding to be removed or replaced to install flashing. He noted that roofers performed this task every day without removing the siding. Finally, Johnson noted that McCoy did not actually remove siding to prove that his report was accurate and showed no photo evidence of rusted or deteriorated metal flashing. (*Id.*).

Guerra-Prats stated in a January 2021 declaration that he disagreed that the appraisal award was true and accurate because Johnson provided for the replacement of the roof

assemblies and flashings for all six buildings, but did not provide for all the work necessary to actually replace the flashings. (D.E. 24 at 1-2). Guerra-Prats reiterated that the siding had to be replaced in order to replace the flashing, meaning that it was impossible to do the work that Johnson's award provided for without also replacing the siding. (*Id.*). McCoy stated the same in a declaration. (D.E. 24-1 at 1-2).

## II. DISCUSSION

Under Texas law, "appraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable, and every reasonable presumption will be indulged to sustain an appraisal award." *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2004, no pet.). However, an appraisal award may be disregarded when, among other reasons, it was: (1) made as a result of fraud, accident, or mistake; or (2) not in compliance with the requirements of the policy. *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.*, 877 S.W.2d 872, 875 (Tex. App.—San Antonio 1994, no writ)). The party seeking to set aside the award carries the burden of proof. *Franco*, 154 S.W.3d at 786 (citing *Barnes v. Western Alliance Ins. Co.*, 844 S.W.2d 264, 267 (Tex. App.—Fort Worth 1994, writ dism'd)).

An appraisal award may be set aside on the ground of mistake only where there is a showing that the award does not speak to the intention of the appraisers. *JM Walker LLC v. Acadia Ins. Co.*, 356 Fed. App'x 744, 746 (5th Cir. 2009). In other words, a mistake occurs when the appraisers were operating under a mistake of fact that resulted in an unintended award. *Abdalla v. Farmers Ins. Exch.*, No. 07-17-00020-CV, 2018 WL 2220269, at *1 (Tex. App.—Amarillo May 14, 2018). As the Fifth Circuit noted, "[a]n

7

umpire often must choose between two competing values," and the decision to choose one value over another does not mean the award was premised on a mistake. *Id.* "[A]ppraisal panels are within their rights when they consider whether damage was caused by a particular event or was instead the result of non-covered pre-existing perils." *TMM Invs., Ltd. v. Ohio Cas. Ins. Co.*, 730 F.3d 466, 474 (5th Cir. 2013).

Courts enforce unambiguous insurance policies as written. *Pan Am Equities, Inc. v. Lexington Ins. Co.*, 959 F.3d 671, 674 (5th Cir. 2020). "Ambiguity" requires that the contract language be open to two or more reasonable interpretations. *Id.*

Here, Nemo Cay has not established that the appraisal award was the result of an accident or mistake, or that there was any other infirmity that would require setting aside the award. In order to prevail, Nemo Cay must show that the appraisal award does not speak to the intention of the appraisers. *JM Walker*, 356 Fed. App'x at 746. The umpire, Johnson was aware of Nemo Cay's current arguments when he entered the appraisal award, but rejected those arguments at the time. (D.E. 22-2 at 4, 10). In his affidavit filed in response to this motion, Johnson reiterated that he was aware of these arguments at the time and rejected them. (D.E. 22-3 at 3). Given this evidence, Nemo Cay has not established that the award does not speak to the intentions of the appraisers.

Moreover, part of Johnson's reasoning for rejecting the argument was that the roof on Building 5 was replaced without removing any siding, indicating that removal and replacement of the siding was unnecessary. (D.E. 22-2 at 10; D.E. 22-3 at 3). It is undisputed that no siding was removed when the new roof was installed on Building 5, but the flashing was also not replaced. (D.E. 21-4 at 10). Thus, Nemo Cay contends that

8

Johnson made a mistake of fact when he concluded that removal of the siding was not necessary for proper roof repairs. However, Nemo Cay has provided no evidence regarding why the flashing was not replaced. McCoy and Guerra-Prats both speculate that it was because the insurance adjuster did not provide for the removal and replacement of siding on Building 5, but this is speculation. (D.E. 21-4 at 10; D.E. 22-2 at 5). There is no evidence in the record from the roofing company or Nemo Cay management explaining why the flashing was not replaced on Building 5. Thus, it is unclear whether the failure to replace the flashing was due to the lack of funds to remove siding, because it was unnecessary, or for some other reason.

Finally, as to Nemo Cay's argument that the appraisal award was not consistent with the requirements of the policy, the award was entered following the appraisal process outlined by the policy. (D.E. 11-1 at 24, 46). Both parties chose appraisers and agreed to Johnson as an umpire, Johnson resolved any disagreements between the parties when he entered the appraisal award, and two of the three signed on to the award. (D.E. 22-4 at 2). Thus, the appraisal process was consistent with the requirements of the policy. To the extent that Nemo Cay contends that it was inconsistent with the policy's requirement to calculate the "amount of loss," this argument cannot be separated from the accident-or-mistake analysis because the root issue is whether the siding needed to be included in the award.

Under these circumstances, Nemo Cay has not met its burden to establish that the appraisal award should be set aside.

## III.  RECOMMENDATION

Accordingly, it is recommended that Nemo Cay's "Opposed Motion to Partially Set Aside Appraisal Award" (D.E. 21) be DENIED.

Respectfully submitted on March 5, 2021.

_____
Julie K. Hampton
United States Magistrate Judge

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).